The American Exchange National Bank, Respondent, *v.* The New York Belting and Packing Company, Appellant.

1. Promissory Notes — Holder for Value. — The holder for value, before maturity and without notice of any fact affecting their validity, of notes taken as collateral security, for which other notes are substituted, is a holder for value of the substituted notes.

2. Negotiable Paper — Defect in Title. Where it is sought to defeat the right of the holder of negotiable paper before maturity to recover against the maker, it is essential that actual notice be proved of the defect in title, or that circumstances be shown evidencing bad faith in the holder and creating reasonable grounds for suspecting his conduct in the transaction.

3. Promissory Notes — Dealing with Note Broker. The mere fact that the holder for value of a promissory note made by a third party receives it from a person engaged in the note-brokerage business, as collateral security for a loan to such broker, is not sufficient to raise a doubt as to the authority of the broker to so deal with the note.

4. Banks — Good Faith of Customer. A bank has a right to assume, as to notes offered to it, whether for discount or as collateral security, by a customer who has an account with it and who is in the habit of. borrowing money from it, that the customer is acting in good faith and within his lawful rights; and the fact that the customer is engaged in the business of note-brokerage is not enough to deprive the bank of the right to indulge in such assumption.

5. Diversion of Note — Burden on Holder. When in an action against the maker of a promissory note, he shows that the note has been wrongfully diverted from the purpose for which it was given, it is incumbent upon the plaintiff, who has shown himself to be a holder for value, to re-establish his position as a *bona fide* holder by proof that he took the note in good faith and without knowledge of such diversion.

6. Diversion of Note — Good Faith of Holder — Evidence. When, in such an action, after the plaintiff has made proof of the note and of the amount due upon it, the direct testimony of the only witness called by the defendant establishes a wrongful diversion of the note by the witness, but fails to show knowledge thereof by the plaintiff, who is a holder for value, and the latter, upon cross-examination of the witness, proves that he had no notice of its unlawful diversion and that there was nothing in the circumstances attending the receipt of the note to charge him with such notice, and there is nothing in the relations of the plaintiff and the witness which imposed any duty of inquiry upon the plaintiff or which renders the evidence of the witness of doubtful value, the plaintiff is not required to furnish additional evidence of his lack of notice to entitle him to a verdict by direction of the court.

7. Relation between Customer and Bank. The relation of a customer to his bank is not of such a kind as to render of doubtful value, on the score of interest, evidence of the customer, on cross-examination by the bank in an action by it against the maker, of the bank's lack of notice in taking, as collateral security for a loan to the witness, a note which had been delivered to him, as the maker's agent, for sale or discount and which he had diverted from the purpose of its delivery — even assuming that the customer became the bank's witness.

*Grant* v. *Walsh* (145 N. Y. 502); *Vosburgh* v. *Diefendorf* (119 N. Y. 357); *Canajoharie Nat. Bank* v. *Diefendorf* (123 N. Y. 191), distinguished.

Reported below, 74 Hun, 446.

(Argued February 25, 1896; decided March 10, 1896.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made December 15, 1893, which affirmed a judgment in favor of plaintiff entered upon a verdict directed by the court.

This action was brought to recover the sum of $5,000 and interest, upon a promissory note dated July 18th, 1890, and made by the defendant to its own order. The defendant admitted the making of the note; but denied that the plaintiff was a holder for value and in good faith, and alleged that the plaintiff took the same with full notice and knowledge of the fact that it had been diverted from the purpose for which made and delivered. It was shown that the plaintiff received the note from a corporation called the Potter-Lovell Company, doing a brokerage business in commercial paper and other securities. The company was represented in New York

city by a person named Corey, as its agent. The defendant had delivered the note to the Potter-Lovell Company to be sold, or to be discounted for it, under an arrangement with that company, which had existed for some time between them. Corey had effected a loan from the plaintiff to the Potter-Lovell Company, in May, 1890, cf $100,000, on that company's note at four months, and pledged for its payment, among other securities, two of defendant's notes for $5,000 each, dated in the previous February and March, due in nine months from date and of like negotiable character with the one in suit. He received from plaintiff the full amount of the note, less the legal interest from the time of its running. When the note in suit was handed to Corey by the defendant, it was accompanied by another for a similar amount. These two notes were, thereafter, substituted with the plaintiff by Corey, as a part of the collateral security for the loan mentioned, in the place of the defendant's two other notes of February and March, which were then withdrawn.

Upon the trial, after the plaintiff had rested its case upon proof of the note and of the amount due upon it, the defendant gave evidence, by its treasurer, to show that the arrangement with the Potter-Lovell Company only allowed of the discount or sale of defendant's notes, and then called Corey as a witness to prove that he was the New York agent of the Potter-Lovell Company; that it carried on the general business of note brokerage and that the note had been pledged as collateral to the plaintiff's loan to that company. The plaintiff thereupon cross-examined Corey and showed by him the facts as to the Potter-Lovell Company's transaction with it. The date, precisely, when the loan to the Potter-Lovell Company was made, prior to May, 1890, for which the defendant's prior notes had been originally pledged, is said to be in doubt; but the witness Corey testified, very positively, that the defendant's two earlier notes had been deposited by him as security for that loan. He gave the date, in May, 1890, when that prior loan was paid off and the new loan for $100,000 was negotiated, and testified that those notes formed part of

the collateral security and were withdrawn by him, upon substituting the defendant's two July notes; of which the note in suit is one.   When the defendant rested, upon plaintiff's motion, the court directed a verdict for the amount of plaintiff's claim; to which direction the defendant excepted.   The judgment entered upon this verdict was affirmed at the General Term and the defendant has appealed to this court.

*Austen G. Fox* for appellant.   When the defendant had given evidence that tended to show a fraudulent diversion of the "withdraw" notes, the burden of proof was upon the plaintiff to show it had received them for value and without notice of such diversion.   (*Grant* v. *Walsh*, 145 N. Y. 502; *Joy* v. *Diefendorf*, 130 N. Y. 6; *Canajoharie Nat. Bank* v. *Diefendorf*, 123 N. Y. 191; *Vosburgh* v. *Diefendorf*, 119 N. Y. 357; *F. Nat. Bank of C.* v. *Green*, 43 N. Y. 298; *M. Nat. Bank* v. *H. I. Works*, 159 Mass. 158; *Becker* v. *Koch*, 104 N. Y. 394; *Manhattan Co.* v. *Phillips*, 109 N. Y. 383.)   In the present case, the relations that existed between the plaintiff and the Potter-Lovell Company made the case, peculiarly, a case for the jury.   (*Sheffield* v. *L. J. S. Bank*, L. R. [13 App. Cas.] 333; *F. Nat. Bank of C.* v. *Green*, 43 N. Y. 298; 145 N. Y. 507.)   The court erred in excluding evidence tending to show that the plaintiff, after May 28, 1890, had received from the Potter-Lovell Company notes of the defendant without parting with any value at the time of receiving them.   (*Becker* v. *Koch*, 104 N. Y. 394; 123 N. Y. 192; 130 N. Y. 6.)

*Michael H. Cardozo* for respondent.   The production of the note in suit was *prima facie* evidence that the plaintiff was a *bona fide* holder thereof for value and before maturity.   The proof by the defendant that the note was made to be sold, and not to be pledged, shifted the burden and cast upon the plaintiff the onus of again showing that it was a *bona fide* holder for value before maturity or had succeeded to the rights of such a holder.   This burden the plaintiff assumed and fully discharged.   (*Grant* v. *Walsh*, 145 N. Y. 502;

*Canajoharie Nat. Bank* v. *Diefendorf*, 123 N. Y. 191; *Vosburgh* v. *Diefendorf*, 119 N. Y. 357; *Nickerson* v. *Ruger*, 76 N. Y. 279; *F. & C. Nat. Bank* v. *Noxon*, 45 N. Y. 762; *King* v. *Doane*, 139 U. S. 166; *Hay* v. *Jaeckle*, 90 Hun, 114; Daniel on Neg. Inst. § 819.) The plaintiff was a *bona fide* holder of the two notes of the defendant, dated respectively February 19 and March 26, 1890, each for $5,000, pledged to it by Potter-Lovell Company on March 28, 1890, as collateral security for the payment of its $100,000 note, discounted by the plaintiff on that day. (*Merchants' Nat. Bank of W.* v. *Hall*, 83 N. Y. 338; *Bank of N. Y.* v. *Vanderhorst*, 32 N. Y. 553; *Park Bank* v. *Watson*, 42 N. Y. 490; *P. Ins. Co.* v. *Church*, 81 N. Y. 218.)

Gray, J. The learned counsel for the defendant has, with much ability and with considerable force, insisted that it was error to direct a verdict for the plaintiff; inasmuch as it had not relieved itself of the burden of proving that it was a holder of the note for value and in good faith. He argues, in substance, that the evidence of the witness Corey, disclosing the circumstances under which the plaintiff had received, as security for its loan to the Potter-Lovell Company, the prior notes of the defendant, (for one of which the note in suit was substituted), was insufficient to warrant the direction of a verdict. It is suggested by him that the plaintiff, in such a case, was bound to show by a preponderance of evidence that it took without notice, and as it relied upon the testimony of the witness Corey, who committed the fraud, that the question still remained one for the determination of the jury. It is to be observed that the defendant does not, apparently, dispute, if the plaintiff received the two prior notes of the defendant for value, before maturity and without notice of any fact affecting their validity, that then it is entitled to recover upon the note in suit. In that position he is undoubtedly right; inasmuch as the surrender of the prior collateral note, when it received the note in suit, made it a holder for value of the latter. (*Park Bank* v. *Watson*, 42 N.

Y. 490.)    As we read the evidence, relating to the transactions in which the defendant's earlier notes had been pledged to the plaintiff, to secure the payment of the Potter-Lovell Company's note for $100,000, we do not think it is open to any doubt. . Corey's evidence upon the subject clearly shows that the earlier notes were deposited with the plaintiff, in May, 1890, as a part of the collateral security, upon the strength of which the loan was made to the Potter-Lovell Company, and it is quite immaterial that they may have been in the possession of the bank as security for another loan prior to that time.    When the plaintiff received them as collateral security for the repayment of the loan of money upon the Potter-Lovell Company's note, it · became a holder for value and the only question for. us to consider is, whether the plaintiff was successful in showing that it had no notice of the diversion of the defendant's notes from the purpose for which delivered to the Potter-Lovell Company and that there was nothing in the circumstances attending its receipt of the notes to charge it with such notice ; or whether, at the close of · the case, there was such reasonable doubt upon the matter, or such room for a possible inference adversely to the plaintiff's *bona fides*, as that it should have been left to the jury to pass upon the question.    When the defendant had shown the wrongful diversion of its notes by the Potter-Lovell Company, it was incumbent upon plaintiff to assume the burden of restoring its position of being a *bona fide* holder of the note for value, which had been assailed by the defendant's evidence.    The rule, in cases where the maker of a note shows that it was obtained from him by some fraudulent practice, requires the holder, who sues upon it, to show under what circumstances and for what value he became such.    (*F. Nat. Bank* v. *Green,* 43 N. Y. 298.)    It seems to us that the plaintiff did respond sufficiently to the requirements of the rule and that it made no difference that the evidence, upon which it relied to re-establish its position, was elicited upon the cross-examination of the defendant's witness Corey.    If Corey's evidence, when revealing all the facts, failed to show that

the plaintiff had taken the notes from him under circumstances of such a suspicious nature as to charge it with a knowledge, affecting their validity in its hands, then we think it is clear that plaintiff had done all that was fairly necessary to destroy the effect of the evidence with respect to the wrongful use of the notes. Unless there was something in the mere fact that the plaintiff received the notes from the Potter-Lovell Company, which should cause it to suspect the latter's right to pledge them, we see nothing in the evidence to warrant an inference that the plaintiff had any knowledge of the circumstances under which they were held by that company. While it is true that the Potter-Lovell Company was engaged in business as a broker in commercial paper, we do not think that that circumstance was enough to raise a doubt as to its authority to deal with commercial paper in its possession, which third persons were bound to entertain. It was necessary, in order to deprive the paper of its negotiable attributes, that it should appear that the plaintiff knew, or had reason to believe, that the Potter-Lovell Company was acting as agent for the maker and not as an owner. The Potter-Lovell Company was a customer of the plaintiff, with which it had an account and from which it was in the habit of borrowing money, and the plaintiff had the right to assume, as to notes offered to it, whether for discount, or as collateral security for loans of money, that its customer was acting in good faith and within its lawful rights. The fact that its customer was engaged in the business of a note brokerage was not one which deprived the plaintiff of the right to indulge in that assumption. Nor do we think that Corey's credibility as a witness should have been passed upon by the jury. He was called as a witness by the defendant. He, or the Potter-Lovell Company which he represented, was the broker employed by the defendant in procuring sales and discounts of its notes. If the defendant relied upon his evidence to defeat the plaintiff's right to recover, by showing a wrongful diversion of the notes, it surely was competent for the plaintiff, out of the mouth of the same witness, to show

the nature of the transactions and to establish that there was nothing in them which affected it with notice of an infirmity in the title of the Potter-Lovell Company to pledge the notes for its own use. In all cases, where it is sought to defeat the right of the holder of negotiable paper before maturity to recover against the maker, it is essential that actual notice be proved of the defect in title, or that circumstances be shown evidencing bad faith in the holder and creating reasonable grounds for suspecting his conduct in the transaction.

The defendant's counsel has referred to several cases, recently decided in this court, as furnishing some support for his position that, in the present case, it was incumbent upon the plaintiff to give affirmative evidence upon the question of its being a *bona fide* holder. We think that that evidence was offered through the cross-examination of the witness Corey, upon whom the defendant had relied, and that it did entirely establish the good faith of the plaintiff in the transaction. The cases to which he refers us were very different in their facts from the one in question. In *Grant* v. *Walsh* (145 N. Y. 502), a judgment for the plaintiff, entered upon the direction of a verdict, was reversed, because the defendant had not been permitted to show that a fraud was practiced upon him and that the officers of the St. Nicholas Bank, of which the plaintiff was the receiver, had knowledge of the circumstances under which the defendant's check was given to the Madison Square Bank. The rule applied there was that when a maker of negotiable paper shows that it was obtained from him wrongfully as by fraud, or duress, a subsequent transferee must show that he is a *bona fide* purchaser, before becoming entitled to recover upon it. In *Vosburgh* v. *Diefendorf*, (119 N. Y. 357), the note was purchased at half its face value and that fact and the circumstances attending the purchase and the plaintiff's knowledge of the original parties to the transaction, were deemed to necessitate the submission to the jury of the question of the plaintiff's innocence and good faith. The doctrine applied in that case was, that the plaintiff did not satisfy

the rule, requiring good faith to be shown by the holder of paper obtained from the maker by fraud, by simply showing that he paid value for the note and then remaining silent upon the subject of notice of the circumstances under which it was given and that, therefore, the question of good faith would have to be passed upon by the jury. But in the later case of *The Canajoharie Bank* v. *Diefendorf* (123 N. Y. 191), the opinion elaborately discussed, in the light of the decisions and text books, the question of what constitutes a *bona fide* holder of a note or bill. In that case the plaintiff's cashier purchased the note at a large discount from a stranger. The circumstances attending the transaction of the purchase were deemed to be so strange and unusual, that it could not be said, as matter of law, that the note had been acquired in good faith. The plaintiff, there, had assumed the burden of proof and the cashier gave his testimony as to the circumstances of the purchase. But, inasmuch as he had an interest in the transaction, by reason of his relations to the bank as an officer and as a large stockholder, his testimony was not deemed to be controlling, although not contradicted, and his credibility was for the jury to pass upon. It was said in the opinion that, " the payment of value for negotiable paper is a circumstance to be taken into account with other facts, in determining the question of the *bona fides* of the transaction, and, when full value is paid, is entitled to great weight. But that fact is never conclusive, except in the absence of evidence tending to show notice or bad faith." We considered that holders of such paper are entitled to the benefit of the rule, which protects a *bona fide* holder, as it was said in the opinion, " only when they have purchased such paper in good faith, in the usual course of business, before maturity for full value, and without notice of any facts affecting the validity of the paper." In the present case, there were no such facts as were commented upon in the *Diefendorf* cases, as tending to affect the plaintiff with a suspicion that he knew, or might have known, more of the source of the paper, or of the character of the transaction, than he chose to disclose. Here there was no conflict of

evidence; for what there was, in so far as it bore upon the transactions with the plaintiff, came from the defendant's witness and it was of a nature that permitted of no reasonable or fair inference of a knowledge in the plaintiff's officers that the Potter-Lovell Company was dealing unlawfully with this negotiable paper, in pledging it to secure a loan of money from the plaintiff. As it was before suggested, the fact, that the Potter-Lovell Company was engaged in the note broker-age business, was not sufficient to put the plaintiff upon inquiry as to the nature of its ownership. Its general busi-ness did not necessarily prevent it from buying and selling negotiable paper and those who dealt with it were entitled to rely upon its apparent title. It is not a question of the pre-ponderance of evidence, but of the existence of any evidence from which the jury might fairly infer a knowledge in the plaintiff that it was unlawful for the Potter-Lovell Company to pledge the notes with it, and we think that after the trans-action was laid bare, by Corey's full testimony upon the sub-ject, there was nothing which, as between business men, would, or should, be considered as throwing doubt upon the innocence and *bona fides* of the plaintiff. The defendant's counsel insists, with great earnestness, that Corey's evidence was insufficient to conclude the question of the plaintiff's *bona fides* and, after all, that is where he is forced to stand in this contention. But we may assume that Corey, with respect to the evidence given upon his cross-examination, became the plaintiff's witness, for the purpose of freeing itself from the burden then cast upon it by the evidence which the defend-ant had elicited, and, nevertheless, we are unable to see why, if its exhibition of the facts failed to show that the plain-tiff had acted with notice, or in bad faith, the jury should still be asked to pass upon that question. Corey was defendant's witness to show that he, as its agent, had wrongfully diverted the paper confided to him for sale or discount, and if the plaintiff was content to depend upon his cross-examination to negative the inference of an infirmity of title, there was no reason why it should not do so.

Corey did not sustain any such relation to plaintiff as to render his evidence of doubtful value. His concern was one of the customers of the bank, and that relation was not of a kind which imposed any duty of inquiry upon the bank, with respect to their ordinary transactions; or which made Corey an interested witness and, within the cases, would leave the question of his credibility as one for the jury to pass upon. (*Canajoharie Bank* v. *Diefendorf, supra.*)

We think there was no error in the direction of a verdict for the plaintiff, and that there was no error in the rulings made upon the trial, which calls for a reversal of the judgment appealed from.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.