John L. McCammon, Respondent, *v.* Moses B. Shantz, Appellant.

*Evidence — when the transferee of a note must prove that he took it in good faith and for value — submission of the question of good faith to the jury.*

Evidence, that upon the maturity of a note for $4,000, the maker mailed the payee a note for $3,750 and a check for $250; that upon learning that the payee had transferred the $4,000 note, he made a settlement with the transferee and took up such note, and that the payee never returned the $3,750 note to the maker, given in an action upon the latter note brought by a person who had taken it from the payee, imposes upon the plaintiff the burden of showing that he took the note in good faith and for value.

The court is not justified in withdrawing from the jury the question of the plaintiff's good faith, where the only evidence upon that subject is the plaintiff's unsupported testimony which was contradicted to some extent by the payee of the note.

APPEAL by the defendant, Moses B. Shantz, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 7th day of August, 1899, upon the verdict of a jury, rendered after a trial at the Monroe Trial Term, and also from an order entered in said clerk's office on the 29th day of July, 1899, denying the defendant's motion for a new trial made upon the minutes.

*J. B. M. Stephens,* for the appellant.

*Harry Otis Poole,* for the respondent.

ADAMS, P. J. :

The plaintiff brings this action to recover the amount claimed to be due upon a note for $3,750, made by the defendant to the order of one Francis C. Grable, bearing date November 17, 1897, and payable in four months after date.

The defendant, while admitting the execution of the note, insists that the plaintiff is not a *bona fide* holder thereof for value, and the issue thus presented was the only one litigated upon the trial. The plaintiff, in order to maintain the issue upon his part and establish a *prima facie* case, produced the note and then rested. The defendant thereupon gave evidence tending to show that he had purchased a quantity of mining stock of one Grable, the payee, in payment of which he had given his note for $5,000 ; that he subsequently paid $1,000 thereon and gave a new note for $4,000 ; that when the last-mentioned note matured, he sent Grable by mail the note in suit and his check for $250, but that soon thereafter he learned that the $4,000 note had been transferred to a man by the name of Fletcher, who lived at Philadelphia, and that thereupon by the aid of a special messenger, sent to Philadelphia for that purpose, he made a settlement with Fletcher and took up the note which he held.

Grable returned the defendant's check of $250 and promised to return the note, but this promise was never fulfilled. Some correspondence thereafter ensued, in the course of which the defendant learned that his note had been transferred to the plaintiff, by whom this action was ultimately brought.

The evidence as above detailed was undisputed, and confessedly it established a fraudulent diversion of the note. But it did more

than this — it destroyed the presumption of *bona fides* which was created by the possession of the note and cast upon the plaintiff the burden of showing under what circumstances and for what value he became the holder thereof. (*First Nat. Bank* v. *Green*, 43 N. Y. 298; *Vosburgh* v. *Diefendorf*, 119 id. 357; *Canajoharie Nat. Bank* v. *Diefendorf*, 123 id. 191; *Am. Ex. Nat. Bank* v. *N. Y. B. & P. Co.*, 148 id. 698.)

This rule is too well established to admit of discussion, and the reason for it, as declared in the *Vosburgh Case* (*supra*), is "that where there is fraud the presumption is that he who is guilty will part with the note for the purpose of enabling some third party to recover upon it, and such presumption operates against the holder, and it devolves upon him to show that he gave value for it."

It becomes important, therefore, to ascertain whether the evidence given by the plaintiff to meet this rule satisfied its requirements; and in pursuing this inquiry it will be well to refer very briefly to some additional facts which are also uncontradicted.

It seems that the plaintiff, as well as the defendant, had purchased mining stock of Grable, but he had been shrewd enough to obtain from his vendor an agreement in writing to take back the stock and refund the purchase price thereof, with interest, at any time the plaintiff might desire after the expiration of six months from the day of purchase. This agreement was made on the 4th day of June, 1897, and the amount paid for the stock was $4,500. Soon after the expiration of the six months, and on or about December 11, 1897, the plaintiff called to see Grable for the purpose of reminding him of his agreement and asking him to fulfill the same, but Grable avoided the subject, and instead of complying with the plaintiff's request gave him a check for $2,500 upon a bank in Omaha to pay a loan which he had obtained from the plaintiff in October previous, and to secure which he had transferred to him the note in suit. This check was paid in due course of presentation, but the note was retained by the plaintiff, and no demand for its return was made by Grable. Thereafter, and on the twenty-fourth day of December following, as claimed by the plaintiff, another interview took place between him and Grable while they were riding uptown in a cab in the city of New York, and it is concerning this interview that the principal controversy arises. The plaintiff claims that he then told

Grable in substance that he was tired of importuning him to make good his agreement to take back the mining stock and refund the purchase price thereof, and that unless he fulfilled his promise by the first day of January following he (plaintiff) would sue him, and that he would also tell parties with whom Grable was then negotiating for the sale of other stock some things within his knowledge which would interfere with and probably prevent the sale; that Grable replied that the publicity of a law suit would injure his business, and that if the plaintiff would give him until January eighth to fulfill his agreement he might retain the note in suit, together with some other collaterals, as security for the performance of his promise; that the plaintiff finally acquiesced in this proposition and said if Grable would allow him to retain the securities referred to, including the defendant's note, he would grant the extension asked for, and he claims that they then separated with the understanding that the extension had been granted upon the above-mentioned conditions. Grable admits having had a conversation with the plaintiff in a cab, although he thinks it took place on the sixteenth day of December, and that during such conversation the plaintiff agreed to extend the stock agreement until January eighth, but he says no suit was threatened or talked of, and he expressly and unequivocally denies that there was any agreement or understanding that the plaintiff should retain the defendant's note as a condition of granting such extension and as security for the performance of his contract within the time agreed upon.

The evidence of these two witnesses as to what occurred upon the occasion in question is the only evidence in the case which in any way relates to the alleged transfer of the note in suit, and upon this evidence the learned trial justice instructed the jury, in substance, that it was for them to determine whether or not the note was transferred to the plaintiff at the time and in the manner testified to by the plaintiff; and that if they believed his statement they might find that the extension of time granted by him to Grable constituted a good and valuable consideration for such transfer; but he further held that there was no evidence whatever tending to impeach the plaintiff's good faith, and he, consequently, withdrew that question from the consideration of the jury, to which ruling the defendant's counsel duly excepted.

In making this disposition of the question of good faith we think the learned trial court was in error.

When the defendant established the fact that his note had been wrongfully diverted from the purpose for which it was originally intended, the obligation rested upon the plaintiff to show that he became the holder thereof in good faith and for value; and this obligation was not discharged by simply proving that he parted with value. (*Canajoharie Nat. Bank* v. *Diefendorf, supra.*) He was obliged to go further and furnish some evidence of his *bona fides* in the transaction. (*Vosburgh* v. *Diefendorf, supra.*) How was this obligation met? Simply by his own unsupported evidence, which, within well-settled principles, was insufficient, even had it been uncontradicted, to authorize the court to deal with the question as one of law; for the credibility of the plaintiff was something which the jury had the right to consider, and unless the testimony which he gave was entitled to credit, there was no evidence whatever of any transfer of the note, much less of a transfer for value and without notice. (*Joy* v. *Diefendorf,* 130 N. Y. 6; *Honegger* v. *Wettstein,* 94 id. 252; *Kavanagh* v. *Wilson,* 70 id. 177; *Van Mater* v. *Burns,* 76 Hun, 3; *Goldsmith* v. *Coverly,* 75 id. 48.)

Moreover, the jury, even if satisfied that the note had been transferred to the plaintiff, were at liberty, in the peculiar circumstances of this case, to "look between the lines," as was said in *Bank of Monongahela Valley* v. *Weston* (159 N. Y. 201), and determine from the circumstances surrounding the transaction, as detailed by the plaintiff, his manner and conduct upon the trial, his express contradiction by Grable and his apparent contradiction of himself in one or two particulars, whether he did receive this note in good faith and without any notice of the infirmity with which it was affected. These were all regarded as proper considerations upon the question of value, and we fail to see why they did not bear with equal force upon the question of good faith.

Attention is directed to the fact that the witness Grable in his evidence, which was taken by commission, stated that the note in suit when it was pledged to the plaintiff as security for the loan of $2,500 "was deposited with Mr. McCammon in the ordinary way," and it is contended that this is corroborative of the plaintiff's claim, within the principle asserted in *Am. Ex. Nat. Bank* v. *N. Y. B.*

*& P. Co.* (*supra*). The difficulty with this contention, however, is that the plaintiff does not rest his title to the note upon the transfer to which this remark relates, but to the one which is alleged to have resulted from the interview in the cab, after the $2,500 loan had been fully paid, and consequently if the plaintiff had received the note in due course or in the "ordinary way" when it was pledged to him in November, it does not follow that it was received in the same manner in the month of December.

But, without prolonging the discussion, it is sufficient to say that we are convinced, after a careful examination of the case, that taking the view of it which is most favorable to the plaintiff, it was one in which the question of his good faith should have been submitted to the jury, and that by reason of the failure of the trial court so to do, the judgment and order appealed from should be reversed.

All concurred.

Judgment and order reversed and a new trial ordered, with costs to the appellant to abide the event.