(67 App. Div. 86.)

CAHEN v. EVERITT et al.

(Supreme Court, Appellate Division, First Department.    December 20, 1901.)

1. PROMISSORY NOTE—ACTIONS—FRAUD—BONA FIDE HOLDER—QUESTION FOR JURY.

In an action on a promissory note by an indorsee, the maker claimed that she was induced, without any consideration, to sign it, by false and fraudulent representations of the payee that the paper she was signing was a recommendation or indorsement to enable the payee to obtain the agency of an insurance company. The indorsee was the holder of several worthless notes of the payee, whom he knew to be a bookmaker on race tracks, which he surrendered as part consideration for the note, together with a sum in cash less than one-fourth the face of the note, the whole consideration being several hundred dollars less than the note. The indorsee made no inquiries as to how the payee obtained the note, or what consideration was given the maker, though there were indorsed on the note the words "Amount correct," with the maker's name. One of the notes surrendered by the indorsee was drawn on fresher paper than another surrendered note of subsequent date. *Held*, that it was error to direct a verdict for plaintiff, the question whether he was a bona fide holder being for the jury.

2. SAME—BURDEN OF PROOF.

Where the maker of a negotiable note defends an action by an indorsee thereof by showing that the note had a fraudulent inception, the burden of proof is cast upon the plaintiff of showing that he is an innocent holder, without notice of the fraud.

Appeal from trial term, New York county.

Action by Bally Cahen against Mary E. Everitt and another. From a judgment in favor of plaintiff, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

George Wallace, for appellants.
Uriah W. Tompkins, for respondent.

PATTERSON, J. The plaintiff recovered a judgment upon a promissory note made by the defendant Everitt. On the trial of the action a verdict was directed for the plaintiff, after certain evidence was stricken from the record by the court. It is very doubtful whether the ruling expunging this evidence can be sustained, but it is not necessary to refer particularly to that subject, inasmuch as we are of the opinion that the case should have gone to the jury upon the merits. The affirmative defense is set up in the answer that one Anthony, the payee of the note, procured the same to be signed by the defendant Everitt by false and fraudulent representations, "she being made to believe that the paper she was signing was merely a recommendation or indorsement to enable the said Anthony to obtain the agency of an insurance company." Upon the trial of the action the defendant Everitt testified that the defendant Anthony called at her house, and took from his pocket the document which he represented as a recommendation required by an insurance company to enable Anthony to become their agent, and asked her to sign it; that she stated she did not want to do it, but he said: "Why not? You know I have been in trouble, and I have been in prison, and it stands me in hand to get back to business again; and, if you don't sign it, I am a ruined man, for I can't get into business again." The witness swore that it was upon this solicitation that she signed a paper which other witnesses have testified was the note in suit. There was evidence, therefore, to show that this note was fraudulently procured by the payee from the maker. It was dated August 1, 1900. Anthony kept it in his possession until the 5th of September, 1900, when he indorsed and transferred it to the plaintiff, who, on the trial, was entitled to stand upon the presumptions which attach to a negotiable promissory note in the hands of a holder. But when evidence appeared that the note was procured from the maker by fraud, the plaintiff was under the obligation to show that he was a bona fide holder, which means not only that he purchased it before maturity, and paid value, but that he must also show that he had no notice or knowledge of the fraud. Grant v. Walsh, 145 N. Y. 502, 40 N. E. 209, 45 Am. St. Rep. 626; Vosburgh v. Diefendorf, 119 N. Y. 357, 23 N. E. 801, 16 Am. St. Rep. 836; Canajoharie Nat. Bank v. Diefendorf, 123 N. Y. 191, 25 N. E. 402, 10 L. R. A. 676. Circumstances attending the acquisition of the note by the holder may be considered in determining the question of his good faith in taking it. In American Exch. Nat. Bank v. New York Belting & Packing Co., 148 N. Y. 698, 43 N. E. 168, the cases above cited are commented upon and explained, and it is said that holders of such paper (meaning paper which has been fraudulently put in circulation) are entitled to the benefit of the rule which protects a bona fide holder only when they have purchased such paper in good faith, in the usual course of business, for full value, before maturity, and without notice of any facts affecting its validity. When, therefore, a defendant shows that the note was diverted or fraudulently put in circulation, the burden is thrown upon the plaintiff of reestablishing his position as a bona fide holder by showing that he took the note in good faith, without knowledge of any infirmity.

The question in this case, therefore, is whether there are any circumstances which required its submission to the jury upon the subject of the plaintiff having taken the note in good faith. We think such circumstances are to be found in the record. It was shown that for a note of $2,750 which was the amount of that in suit, the plaintiff paid $600 in cash. He took it from a person whom he knew to be a bookmaker on race tracks, with whom he, as a pawnbroker, had had dealings, and whose worthless promissory notes he held, the surrender of which he claims to have been part of the consideration paid for the note in suit. One of these old notes was for $1,010, given in 1896, and the other for $651, given in 1897. He does not appear to have made any inquiry as to how Anthony became possessed of this note, nor what consideration, if any, was given for it by the maker; and when he observed the unusual words indorsed upon the note, "Amount correct. Mary E. Everitt," he made no inquiry whatever concerning it. It also appeared in evidence that one of the notes held by the plaintiff, and which it is claimed he surrendered as part consideration for the note in suit, was drawn upon fresher paper than the surrendered note of a subsequent date. Here were circumstances which might well be considered as being of such a character as to put the plaintiff upon inquiry respecting the validity of the note in suit. The note was impeached by evidence showing that it had a fraudulent inception. When that was done, the holder could no longer rest upon the presumption, but, as was held in the Canajoharie Nat. Bank Case, it was incumbent upon him to show the circumstances under which it came into his possession, and that they exhibited good faith. It was for the jury to say when that had been done. His gross carelessness, although not of itself sufficient as a matter of law to defeat his right, yet constituted some evidence of bad faith. It is neither possible nor necessary to lay down a general rule as to what constitutes bad faith, but here we are impressed by the evidence that the case should have gone to the jury on that subject. From the plaintiff emanated the testimony as to what he gave for this note, and the circumstances under which he acquired it, and as an interested party his credibility was for the jury. True, he was supported by the statements of Anthony, but the interest of that person in sustaining the plaintiff was very great, as he was the individual charged with the perpetration of the fraud upon the maker, and whose character and antecedents were disclosed to the jury. If the defendant Everitt's testimony were to be believed, a gross fraud was perpetrated upon her, and we cannot escape the conclusion that the plaintiff has not successfully shown himself to be such an innocent holder for value as would bring him absolutely within the protection of the rule of law applicable to such a holder of negotiable paper.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.