slander, therefore, cannot be joined with a cause of action for false imprisonment or malicious prosecution. If this case should be brought on for trial upon this complaint, and the plaintiff should fail to prove the combination or conspiracy, but should prove the wrongful acts done, the false imprisonment or malicious prosecution, and the slanders uttered by the various defendants, he would still be entitled to have the question submitted to the jury, and a separate verdict rendered against each of the defendants who had been guilty of the wrong. The complaint contains allegations sufficient to sustain these separate and independent causes of action, and yet, if the action is, as claimed in the prevailing opinion, a single cause of action based upon the combination or conspiracy to injure the plaintiff's business, the plaintiff, upon failure to prove the conspiracy or combination, should be nonsuited.

I think that causes of action were improperly united, and that the demurrer should have been sustained.

---

(100 App. Div. 105)

### HAMILTON NAT. BANK v. UPTON et al.

(Supreme Court, Appellate Division, Fourth Department. January 4, 1905.)

1. NOTES—DIVERSION OF NOTE BY BROKER—NOTICE TO HOLDER—GOOD FAITH—EVIDENCE.

In an action on a note, it appeared that a note broker, to whom defendant had sent the note, diverted it by pledging it with plaintiff bank as security for his own debt, at the time taking up another note of defendant which he had previously pledged. The bank with whom the note was pledged knew that the broker dealt in commercial paper, and had no notice that he was not the owner of the note. Previously, when the bank held a note of defendant as security for a debt of the broker, and another one that it had discounted, the broker, officers of the bank, and defendant discussed the notes held by the bank, and the broker stated in defendant's presence that, if the bank at any time wanted money on the notes, to advise the makers, and they would be taken up. Held, that here was nothing suspicious, so as to render the question of the bank's good faith one for the jury, and the bank was a holder for value.

Appeal from Trial Term, Monroe County.

Action by the Hamilton National Bank against Eli M. Upton and another. From a judgment in favor of plaintiff, defendants appeal. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

John A. Barhite, for appellant.
Elbridge L. Adams, for Surety Co.
Nathaniel Foote, for respondent.

SPRING, J. The plaintiff, a national bank in Chicago, acquired the note in suit before maturity of one A. L. Kemper, who was doing business in that city as a note broker under the firm name of A. L. Kemper & Co. The note was taken as collateral security to an existing indebtedness held by the bank against Kemper. This note of $2,500 and a similar note made by the defendants for a like sum were negotiated at the same time, and the bank surrendered another note of the

defendants, which it had received from Kemper as collateral security for his indebtedness, and the face value of which was $5,000. The defendants were copartners engaged in the coal business in the city of Rochester, and Kemper had before negotiated notes for them. On August 7, 1903, they sent to Kemper & Co. six undated promissory notes, aggregating $20,000, due at different dates in the month of January following, and which included the note in suit. These notes were sent pursuant to an oral arrangement made with Kemper, and the letter contains the following instructions relative to their discount or use: "One is to take care of the one due on the 25th, one you are to send us proceeds for, and the others are for anybody who may want to purchase them." Kemper had no authority to pledge this note as collateral security for his own indebtedness to the bank, and the defendant contends that the circumstances surrounding the negotiation of the note were suspicious and unusual, so that the good faith of the plaintiff was for the jury to pass upon.

The officers of the bank had no information that Kemper was other than the absolute owner of the note. They knew he was a dealer in commercial paper. They had ascertained upon investigation that he was reputed to be worth $2,500. They had during the summer of 1903 discounted over 30 notes at his request, but supposed that he was the owner of each of them, and there is nothing tending to discredit this position. The note was acquired by the plaintiff in October, and the bank officers did not discover the lack of authority in Kemper until January. Even then the defendants, in their telegrams and letters, did not claim that the note had been diverted; only insisting that Kemper had money in his hands to pay it. The plaintiff is a holder for value. Am. Exchange Nat. Bank v. N. Y. Belting & Packing Co., 148 N. Y. 698, 43 N. E. 168. In that case the defendant had delivered the note to a firm doing a brokerage business in commercial paper to be discounted for the benefit of the defendant. The brokers pledged the note with the plaintiff as collateral security for their own indebtedness, and it was substituted for another note of the defendant, which was surrendered to the brokers. The court directed a verdict for the plaintiff, which was sustained by the Court of Appeals. That case is closely similar to the present one in its facts, and decisive of every question involved in this appeal. In the present case there is nothing disclosed in the record to excite any suspicion of the conduct of Kemper at the time of the taking of the note by the plaintiff. Mr. Levis, one of the defendants, called on the plaintiff with Kemper in the summer or fall of 1903, and before this note was accepted by the bank. It then had one note of $5,000 made by the defendants, and used as collateral for the benefit of Kemper, and one which it had discounted. The subject of these notes was talked over with the president and cashier of the bank, and Kemper voluntarily made the statement in the presence of Levis that, if the bank at any time desired the money on either of these notes before maturity, to advise the makers at Rochester, and it would be taken up. The defendants were vouching for the authority of Kemper; and the bank officers might well give credence to him after that manifest indorsement.

Carelessness or oversight is not the criterion by which the rights of a holder of commercial paper are to be tested. As was said in Cheever v. Pittsburgh, etc., Railroad Company, 150 N. Y. 59, at page 66, 44 N. E. 701, at page 703, 34 L. R. A. 69, 55 Am. St. Rep. 646:

"The holder's rights cannot be defeated without proof of actual notice of the defect in title, or bad faith on his part, evidenced by circumstances. Though he may have been negligent in taking the paper, and omitted precautions which a prudent man would have taken, nevertheless, unless he acted mala fide, his title, according to settled doctrine, will prevail."

This case was approved in Second Nat. Bank v. Weston, 172 N. Y. 250, 254, 255, 64 N. E. 949.

We doubt there being sufficient evidence to establish the negligence or inattention of the bank officials, but, in any event, they did not act in bad faith, or with any sort of notice that Kemper was using the note unlawfully. Judgment and order should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur.