ARTHUR L. WEISS, Respondent, v. MAX GOLDBERGER and Others, Defendants, Impleaded with HARRY GOLDBERGER and Another, Appellants.

First Department, June 6, 1924.

Bills and notes — action by transferee against first indorsers to recover on promissory note for $5,000 — first indorsers set up fraud in issuance of note — motion by plaintiff for summary judgment — note was purchased by plaintiff for $3,000 — fraud on indorsers is shown by affidavits — burden is on plaintiff to show that he was bona fide purchaser — facts required submission of issue of plaintiff's good faith to jury — summary judgment denied.

Summary judgment will not be granted in an action by a transferee to recover the face of a promissory note of $5,000 from the first indorsers, where they set up in their answer that the note which was executed by a corporation and indorsed by them was so executed and indorsed for the purpose of having it discounted by third persons acting as their agents; that said third persons did not negotiate the note as agreed but used it as collateral to secure other notes which had been purchased through them and the transferee who held the note as collateral

had knowledge of the fraud before he transferred it to the plaintiff; and that the plaintiff was aware of the fraud before he made the final payment for the note which he bought for $3,000, and knew that the third persons to whom the original indorsers delivered the note were held on a charge of grand larceny in negotiating the note contrary to their agreement.

The original indorsers in defending the action showed sufficient fraud by alleging the facts relating to the charge of grand larceny, to make applicable the principle that where a person apparently liable upon negotiable paper shows that it was obtained from him by fraud or duress, the burden is cast upon a subsequent transferee to show that he is a *bona fide* purchaser before becoming entitled to recover.

Furthermore, the facts contained in the pleadings and affidavits are sufficient to require a submission of the issue of plaintiff's innocence and good faith to a jury, and, therefore, it was error for the court to grant plaintiff's motion for a summary judgment.

APPEAL by the defendants, Harry Goldberger and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 24th day of September, 1923, granting plaintiff's motion for summary judgment made under rule 113 of the Rules of Civil Practice, and also from a judgment in favor of the plaintiff, entered in said clerk's office on the 2d day of October, 1923, pursuant to said order.

*Nathan D. Leiman* [*Max S. Seidler* of counsel], for the appellant Harry Goldberger.

*Kornblueh & Hutter* [*Arthur Hutter* of counsel], for the respondent.

FINCH, J.:

The complaint alleges an action on a promissory note for $5,000 made by the Eureka Merchandise Co., Inc., payable to itself and indorsed by Sidney Raymond and Irving Seiss, and also by Goldberger Bros. by Harry Goldberger. From an affidavit upon the motion for summary judgment it appears that said note was also indorsed in blank by the maker. This note the plaintiff alleges he purchased from one Hutter for $3,000 prior to maturity. Said Hutter obtained the note from the defendants Seiss and Raymond, to whom the defendants, appellants, delivered the note under the following circumstances, as alleged in the defense and affidavit in opposition to the motion for summary judgment: The defendants Seiss and Raymond represented to the defendants, appellants, that they were in the business of discounting notes and in a position to obtain funds in this manner. The defendants, appellants, desiring to raise some money, and at the suggestion of Seiss and Raymond that the result could more readily be accomplished by their indorsing the note of a corporation instead of making their own note, indorsed the note in suit made by a cor-

poration brought forward by the defendants Seiss and Raymond, and delivered said note to Seiss and Raymond upon their agreement to negotiate the same within five days, deduct $250 for so doing and turn the proceeds over to the appellants, or if unable to discount the same, then to return said note to defendants, appellants. The appellants allege that, instead of negotiating the note as agreed, the said Seiss and Raymond delivered it to Hutter as collateral security for other notes aggregating $3,000, which Hutter theretofore had purchased from them.

It is alleged in the affidavit in opposition to the motion that after waiting several days beyond the said five days, appellants made innumerable efforts, both by telephone and personal calls and by leaving requests to communicate, to reach Seiss and Raymond at their office, but could not ascertain their whereabouts or when they would return. About six weeks later appellants noticed in the newspapers that an involuntary petition in bankruptcy had been filed against the Eureka Merchandise Co., Inc., and the appellants had Seiss and Raymond arrested when they appeared pursuant to a subpœna before the referee in bankruptcy. After a hearing the magistrate decided that a *prima facie* case of grand larceny had been made out against said Seiss and Raymond, and each was held in bail in the sum of $5,000 for the action of the grand jury, which matter is still pending. Prior to the hearings in the Magistrate's Court, Harry Goldberger swears that he had a conversation with Seiss and Raymond wherein they told him that they had transferred the said note to the defendant Hutter as collateral for the payment of several other promissory notes, and that they had received no cash or other consideration therefor. It further appears in the same affidavit that after Hutter had obtained the note as security and had made several attempts to sell the same, about June first he telephoned to the affiant and was told of the circumstances under which the note had been obtained and that criminal proceedings were being instituted by the appellants' attorney. It further appears that Hutter had come into possession of other notes made by the Eureka Merchandise Co., Inc., so that it is a fair inference from these papers that Hutter was not an innocent holder for value.

It further appears that the plaintiff, who was a man of limited means and needed the money in his printing business, paid the $3,000 he claims he paid to Hutter for the note, as follows: $200 on June fourth, $150 on June seventh, $150 on June eleventh and $2,500 on June fourteenth. On June fourteenth, the very day upon which plaintiff alleges he made the final payment, he was advised by Hutter that a criminal proceeding had been instituted

against Seiss and Raymond in connection with the note, and that he needed the note for production in said proceeding. Plaintiff lent Hutter the note for that purpose upon condition that Hutter indorse the note, which he theretofore had failed to do.

Plaintiff alleges that he paid the $2,500 before he learned of the aforesaid facts, although admitting that Hutter indorsed afterwards; and it is set forth by the appellant Harry Goldberger in his affidavit that Hutter has sworn that he indorsed the note between the fifteenth and the end of June.

The defendants, appellants, claim that both Hutter and the plaintiff had knowledge of all the facts and circumstances alleged, before the transfer of the note. This the plaintiff denies, and contends that the defendant has failed to bring home such knowledge to him, which contention the Special Term has sustained.

Since the defendants Seiss and Raymond have been held in a criminal proceeding to have had a *prima facie* case of grand larceny made out against them, sufficient fraud has been shown to make applicable the principle that where a person apparently liable upon negotiable paper shows that it was obtained from him by fraud or duress, the burden is cast upon a subsequent transferee to show that he is a *bona fide* purchaser, before becoming entitled to recover. (*Vosburgh* v. *Diefendorf*, 119 N. Y. 357; *German-American Bank* v. *Cunningham*, 97 App. Div. 244; *American Exchange Nat. Bank* v. *N. Y. Belting, etc., Co.*, 148 N. Y. 698.) In the case last cited Judge GRAY, writing for the court, said: " In *Grant* v. *Walsh* (145 N. Y. 502) a judgment for the plaintiff, entered upon the direction of a verdict, was reversed, because the defendant had not been permitted to show that a fraud was practiced upon him and that the officers of the St. Nicholas Bank, of which the plaintiff was the receiver, had knowledge of the circumstances under which the defendant's check was given to the Madison Square Bank. The rule applied there was that when a maker of negotiable paper shows that it was obtained from him wrongfully as by fraud or duress, a subsequent transferee must show that he is a *bona fide* purchaser, before becoming entitled to recover upon it."

Even apart from this, however, there is sufficient to require a submission of the issue of the plaintiff's innocence and good faith to a jury. A $5,000 note was purchased for $3,000 under such circumstances as could not be said to be the ordinary business transaction with commercial paper. The plaintiff, as before stated, apparently a man of limited means and needing the money in his own business, starts to make payment for the note in very small installments running over the course of ten days until the very day when he learns that criminal proceedings are pending

in connection with the obtaining of the note; and on this day he claims that he paid five-sixths of the purchase price, and then some time within the next two weeks thereafter obtains the indorsement of his transferor. It certainly cannot be said that the foregoing facts, so far as concerns the plaintiff, are free from suspicion or susceptible of but the one inference of plaintiff's innocence and good faith; and hence the credibility of the plaintiff as an interested witness, even though uncontradicted, would present a question of fact which should be submitted to the jury. In *American Exchange Nat. Bank* v. *N. Y. Belting, etc., Co. (supra)* it is said: " In that case [*Canajoharie Nat. Bank* v. *Diefendorf,* 123 N. Y. 191] the plaintiff's cashier purchased the note at a large discount from a stranger. The circumstances attending the transaction of the purchase were deemed to be so strange and unusual, that it could not be said, as matter of law, that the note had been acquired in good faith. The plaintiff, there, had assumed the burden of proof and the cashier gave his testimony as to the circumstances of the purchase. But, inasmuch as he had an interest in the transaction, by reason of his relations to the bank as an officer and as a large stockholder, his testimony was not deemed to be controlling, although not contradicted, and his credibility was for the jury to pass upon."

It follows that the judgment and order appealed from should be reversed, with costs, and the motion denied, with ten dollars costs.

CLARKE, P. J., MERRELL, McAVOY and MARTIN, JJ., concur.

Judgment and order reversed, with costs, and motion denied, with ten dollars costs.