## CHEMICAL NAT. BANK *v.* COLWELL *et al.*

(*Common Pleas of New York City and County, General Term.* February 10, 1890.)

1. CORPORATIONS—OFFICERS—RESIGNATION.

Declarations by a director of a business corporation to the secretary and treasurer of the company, at the time of executing an assignment of his stock to the lat-

ter individually, to the effect that he severed all connection with the company, and would have nothing more to do with it, unaccompanied by any request that his resignation should be communicated to the board of directors, are insufficient to constitute a valid resignation of the office.

**2. SAME—TRANSFER OF STOCK.**
Evidence that the assignor consented to take a new certificate for the requisite number of shares to remain as a director, on the suggestion that it would be bad policy for him to leave the company entirely, justifies the inference that he concluded to remain on the board.

Appeal from trial term.

An action by the Chemical National Bank of New York against De Witt C. Wheeler, Lewis Colwell, Augustus W. Colwell, Latimer E. Jones, and A. Blanche Jones, directors of the New York Lumber Auction Company, Limited, a corporation organized under the act of the legislature of this state passed June 21, 1875, (chapter 611,) to recover $2,200, the amount of a promissory note of that company transferred to and held and owned by the plaintiff, on the ground that no annual report had been made or filed as required by section 18 of that act. The incorporation of the auction company was admitted by the answer. At a meeting of the stockholders held on 22d day of July, 1885, the defendant Augustus W. Colwell was elected a director of the company. The by-laws provided that directors should serve for one year, or until such times as their successors should be elected; and by section 6 of the act of 1875 it is declared that the by-laws of every corporation created under the provisions of the act shall be deemed and taken to be its law; and by section 10 it is provided that the directors shall be stockholders to the extent of at least five shares, and shall hold their offices until their successors are chosen. By section 18 of the act of 1875 it is provided as follows: "Every such corporation shall annually, within twenty days after the first day of January, make a report, which shall state the amount of the capital, and the proportion actually paid in, the amount, and, in general terms, the nature, of its existing assets and debts, and the names of its then stockholders, and the dividends, if any, declared since the last report, which report shall be signed by the president and a majority of the directors, and shall be verified by oath of the president or secretary of such corporation, and filed in the office of the secretary of state; and, if any such corporation shall fail so to do, all the directors thereof shall be jointly and severally liable for all the debts of the corporation then existing, and for all that shall be contracted before such report shall be made." Laws 1875, p. 759. No such annual report was filed by that company. On the 2d day of July, 1886, the lumber auction company made its promissory note for $2,200, payable to its own order, and indorsed the same. On the next day, July 3d, it was in the hands of Latimer E. Jones, and it was on the same day indorsed by Benjamin L. Ludington. On the 21st day of July of the same year, the note was discounted by the plaintiff for Latimer E. Jones; and the proceeds, less the discount, were passed to his credit in his individual account with the bank. Jones was a director of the company. The defendant Augustus W. Colwell attempted to show that he had resigned as director of the company some time in November, 1885. He never sent to the company any written resignation, and did not give a notice of resignation at a meeting of the board of directors. His claim that he resigned rests wholly upon what he said to Latimer E. Jones, a co-director, at the office of the company, on the 5th day of November, 1885, and what he did at that time with his certificate of stock. There was no disputed question of fact, and on plaintiff's motion the court directed a verdict for the plaintiff, to which said defendant excepted. After a further hearing and consideration, the court adhered to the direction it had given on the trial, and judgment was entered for the plaintiff. Defendant Augustus W. Colwell alone appeals.

Argued before LARREMORE, C. J., and BOOKSTAVER and BISCHOFF, JJ.

*J. Alfred Davenport* and *Edward C. Perkins,* for appellants.   *Jones &
Roosevelt,* for respondent.

LARREMORE, C. J.   I concur in the conclusion reached by Judge VAN HOE-
SEN,[1] and in the reasons assigned by him in his opinion, filed upon the denial
of defendant Colwell's motion for a new trial.   It will be unnecessary to
further consider the questions which are fully discussed in such opinion.   It
may be well, however, to pursue the discussion a little further on the ques-
tions of appellant's alleged resignation as a director, and the transfer of his
stock in the New York Lumber Auction Company, Limited.   Accepting the
version of the transaction supplied by appellant's witnesses, the facts are as
follows:·  On the 5th day of November, 1885. appellant said to Latimer E.
Jones, the secretary and treasurer, at the office of the company, at the time
of executing an assignment to said Jones individually of the 80 shares of stock
which appellant then owned:   "Now, Jones, that severs all my connection
with the lumber auction company.   I have got nothing further to do with it.
You have got father's stock, he is dead, and that settles that; and I have
given you mine, and that clears up all that,—and I have nothing further to
do with the company."   Mr. Jones was appellant's brother-in-law, and the
above conversation is what appellant relies on to establish a resignation.
Appellant admitted that he did not tell Mr. Jones to communicate his resig-
nation to the board of directors, saying, however, that he had told Mr. Jones
previously that he wished to resign.   Granting that the right of a director to
resign is absolute, and admitting that no writing, and no particular form of
words, is essential, it is nevertheless true that any communication, in order
to constitute a valid resignation, must express a definite and present inten-
tion to withdraw from the office in question, and must be addressed to the
company or the board of directors, or to an officer, as such, with the explicit
purpose of having it reach the company or board of directors, through him.
I do not think the facts relied on to establish a resignation here are as strong
as they were in *Kindberg* v. *Mudgett,* 24 Wkly. Dig. 229.   In that case,
it appeared that the defendant had stated orally to several trustees that he
would have nothing more to do with the company, besides writing a note to
that effect to one of them.   Yet, even under those circumstances, the court
held that defendant's declarations could not be construed as a resignation.

Appellant further contends that he ceased to be a director under section 10
of the act, because on November 5th he executed an assignment of all the
stock he held to Jones.   The facts are that he executed such an assignment
in the blank upon the back of his certificate on November 5th, but that the
actual transfer on the books was not made until November 14th, when 75 of
the shares were transferred to Jones, and a new certificate for the remaining
five shares was made out in appellant's name.   Appellant's witness Atchi-
son says on this point: "I suggested to Mr. Jones that it would be bad poli-
cy for Mr. Colwell to leave the company entirely, and that he persuaded him
to accept the requisite number of shares to remain as a director, which was
afterwards done."   It does appear that appellant actually took back the cer-
tificate for such five shares, presumably, as Mr. Atchison testifies, with the
intention of remaining a director.   The trial judge was therefore justified in
inferring that appellant concluded to ratify the act of Jones and Atchison, in
keeping him eligible for, and actually in, the board.   In contemplation of
law, I think appellant was the holder of said five shares throughout his
term of office.   He intended originally to assign all his shares, but only
75 of them actually were transferred; and, as he consented afterwards to re-
tain the five shares which all the time stood in his name, it would be putting
a most unnatural and technical construction upon the conceded facts to hold

[1] See note at end of opinion.

that he was not continuously a stockholder. My conclusion is that appellant was legally a director of the corporation at the time of the failure to file the annual report, and of the inception of the debt, and that he is liable as sued in this action.

NOTE.

· The opinion filed on the denial of the motion for a new trial is as follows:

VAN HOESEN, J. I think that the plaintiff is entitled to judgment on the verdict. This case differs from those on which the defendant relies. The statute (section 10) provides that the business shall be managed by a board of directors, and "by such officers, to be elected from the directors, as the by-laws shall prescribe. " The by-laws preclude the idea that the ordinary business of the company was to be managed by the board of directors; for they provide that the directors shall only meet semi-annually, unless the president or the secretary shall call a special meeting. They then provide that the president shall make, sign, and execute all contracts in the name of the company. He is not merely to sign and execute; he is to make all contracts. This clause makes the president the general agent of the company, with power to transact all business that the company could lawfully do. It implies, if it does not expressly confer, the power to make such negotiable paper as was necessary or convenient in the business of the company. There is another clause of the by-laws which declares that all notes shall be signed by the treasurer, but I do not regard that as tantamount to a declaration that a note shall not be valid unless the name of the treasurer be signed to it. The by-laws are in several places contradictory; for one clause provides that the corporate seal shall be attached only to certificates of stock unless special directions to the contrary be given by the president or the treasurer, and the clause makes it the duty of the secretary to attach the seal to all contracts. I believe that the president had the right, without the authority of the board of directors, to make contracts, and to make the contract that is the subject of this action. There is nothing in the evidence to show that the contract is one that the president ought not to have made, though there is evidence that the money obtained upon the note was used by one Jones, who was a director of the company, for his own private purposes. The fact that Jones was a director of the company, and that the proceeds of the note were applied by him to his own use, does not show that the note was made for his accommodation, nor did the possession of the note by him naturally give rise to the question as to whether he was not confederating with the president of the company to make an improper use of the credit and the paper of the company. The note was signed: "New York Lumber Company, Limited, D. C. WHEELER, Pres.," and was drawn to the order of "New York Lumber Co., Lim.," and it was indorsed exactly as it was signed. Such a note, so indorsed, though presented for discount by a director of the company 20 days after it bore date, did not, upon its face, suggest that it was an accommodation note; nor did the possession of it by a director argue that it was used for a dishonest purpose. If, in point of fact, the proceeds of the note went into the company business, or if the note, after having been used in the business of the company, had found its way into the hands of a director, (and the bank had nothing before it to show that either state of affairs was unlikely,) what reason was there why it should not be discounted? The so-called resignation of the defendant did not terminate his duties as a director. It was never accepted, (Boone, Corp. § 136; Ang. & A. Corp. §§ 433, 434,) nor do I think that he absolutely and irrecovably resigned, though he talked of resigning. No successor had ever been chosen, nor had the resignation ever been brought to the notice af the board. His term had not expired by its own limitation. There should be judgment on the verdict.

1. CORPORATIONS—OFFICERS—RESIGNATION.

